IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

MOKE AMERICA LLC,
　　Plaintiff

　　　v.                                             Civil No. 3:20cv400 (DJN)

AMERICAN CUSTOM GOLF CARS, INC., *et al.*,
　　Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff and Counterclaim Defendant Moke

America LLC's ("Plaintiff") Motion to Exclude Testimony from Defendants' Expert Coleman

Sachs (the "Motion to Exclude" or the "Motion") (ECF No. 154).  Defendants and Counterclaim

Plaintiffs American Custom Golf Cars, Inc. ("ACG"), Moke USA, LLC ("Moke USA"), and

Moke International Ltd. ("Moke International") (collectively, "Defendants") responded in

opposition (ECF No. 159), and Plaintiff replied (ECF No. 160).  The Motion to Exclude now

stands ripe for decision.  For the reasons stated below, the Court will GRANT Plaintiff's Motion

(ECF No. 154).

## I.　　BACKGROUND

### A.　　Factual and Procedural History[1]

The parties, both dealers in "low-speed land vehicles," find themselves locked in a legal

battle over a disputed trademark — namely, the "MOKE" mark (the "MOKE Mark" or the

"Mark").  (Amended Complaint ("Am. Compl.") ¶ 18; Third Amended Counterclaims ("3d Am.

---

[1]　　The Court summarizes only the facts pertinent to Plaintiff's Motion.  As such, the Court
does not purport to provide an exhaustive summary of the facts.

Countercl.") ¶ 27.)  Plaintiff Moke America claims that it acquired common law trademark rights in the Mark via a November 2016 assignment from non-party Mini Mania, Inc. ("Mini Mania"). (Am. Compl. ¶¶ 9-15.)  Defendants Moke International, Moke USA, and ACG claim that Moke International — the ultimate assignee of trademark rights initially belonging to ACG — owns trademark rights in the Mark pursuant to ACG's August 2015 trademark application with the Patent and Trademark Office (the "PTO").  (3d Am. Countercl. ¶ 27.)

The parties initially litigated their dispute before the PTO's Trademark Trial and Appeal Board ("TTAB"), where Plaintiff opposed ACG's 2015 application to register the MOKE Mark. (Complaint ("Compl.") Ex. 6, at 1-2.)  Before the TTAB, Plaintiff argued that the common law trademark rights it acquired from Mini Mania long predated ACG's 2015 trademark application, as Mini Mania first used the MOKE Mark in commerce in 1974.  (Compl. Ex. 6, at 2.)  Based on Mini Mania's sales records and the testimony of Plaintiff's CEO, Plaintiff maintained that it, not Defendants, rightfully claimed priority in the Moke Mark.  (Compl. Ex. 6, at 2.)  The proceedings before the TTAB culminated in an April 2020 opinion dismissing Plaintiff's opposition, as the TTAB found that Plaintiff "failed to prove prior use of the MOKE trademark." (Compl. Ex. 6, at 23.)

Plaintiff commenced the current action by filing its Complaint (ECF No. 1) on June 5, 2020, wherein it appealed the TTAB's decision and sought a declaratory judgment that "all common law trademark rights in 'MOKE' rest with Moke America."  (Compl. 12.)  On July 27, 2020, Plaintiff filed its Amended Complaint (ECF No. 20), expanding its causes of action to include, *inter alia*, a claim for trademark infringement under the Lanham Act.  (Am. Compl. ¶¶ 59-65.)  In its Amended Complaint, Plaintiff alleges that Defendants infringed upon Plaintiff's

Mark by "selling, offering for sale, and broadly and deceptively advertising their vehicles under" the MOKE mark.  (Am. Compl. ¶ 60.)

Defendants filed their Answer to the Amended Complaint and Amended Counterclaims (ECF No. 21) on August 10, 2020, disputing Plaintiff's infringement claim and asserting their own counterclaim for trademark infringement based upon Plaintiff's use of the MOKE Mark. (Am. Countercl. ¶¶ 59-65.)  Defendants later submitted Second Amended (ECF No. 100) and Third Amended (ECF No. 146) Counterclaims, first to reflect the assignment of Moke USA's trademark interest to Moke International and then to replead their Connecticut state law claims under Florida law.[2]

In their Third Amended Complaint, Defendants contest Plaintiff's purported common law trademark rights, and thus Plaintiff's supposed priority in the Mark, under the "unlawful use doctrine," which stands for the proposition that unlawful commercial activities "cannot provide the basis for a protectable trademark interest."  *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1086 (11th Cir. 2016).  Pursuant to the unlawful use doctrine, Defendants argue that Plaintiff's alleged violations of the National Traffic and Motor Vehicle Safety Act vitiated any common law trademark rights that Plaintiff asserts in the MOKE Mark.  (3d Am. Countercl. ¶¶ 26, 66.)

On top of their infringement claims, both sides allege additional causes of action under federal and state law.  Plaintiff brings Lanham Act claims for unfair competition and false representation as well as multiple business tort claims under New York state law.  (Am. Compl. ¶¶ 66-98.)  Defendants bring a Lanham Act claim for unfair competition, a copyright

---

[2]    Neither amendment to Defendants' counterclaims materially affects the Court's analysis regarding Plaintiff's Motion.

infringement claim under the Copyright Act, and two business tort claims under Florida state law. (3d Am. Countercl. ¶¶ 75-108.) The Court denied cross-motions for partial summary judgment on June 28, 2022. (ECF No. 152.) A jury trial in this case is scheduled to begin with jury selection on January 26, 2023.

Currently before the Court is Plaintiff's Motion to Exclude Testimony from Defendants' Expert Coleman Sachs ("Mr. Sachs") (ECF No. 154), a former National Highway Traffic Safety Administration ("NHTSA") employee, who intends to opine about Plaintiff's alleged violations of the National Traffic and Motor Vehicle Safety Act. (Decl. Coleman Sachs ("Decl.") ¶¶ 3-12.)

**B.    Mr. Sachs' Proposed Testimony**

Defendants retained Mr. Sachs to "opine as to whether Moke America's vehicles have or have not complied with relevant Federal [M]otor [V]ehicle [S]afety [S]tandards." (Decl. ¶ 5.) To that end, Mr. Sachs devotes the bulk of his Expert Witness Statement (ECF No. 159-2) to detailing the specific Federal Motor Vehicle Safety Standards ("FMVSS") for which Plaintiff allegedly did not comply. (Expert Witness Statement ("Exp. Wit. Stmt.") 5-10.)

Mr. Sachs begins his report, however, by outlining the regulatory landscape in which low-speed vehicles, like the ones at issue in the instant case, operate. (Exp. Wit. Stmt. 1-3.) From there, Mr. Sachs lists the specific FMVSS applicable to low-speed vehicles and the requirements that those standards entail. (Exp. Wit. Stmt. 3-4.) Mr. Sachs next offers his qualifications as an expert witness, which are not in dispute. (Exp. Wit. Stmt. 4-5.) Then, beginning on page four, Mr. Sachs sets forth the expert opinions that he will offer at trial and the factual bases for those opinions. (Exp. Wit. Stmt. 5-10.)

Mr. Sachs gleans most of the facts underlying his opinions from three sources. (Exp. Wit. Stmt. 6-9.) First, Mr. Sachs cites a 2019 report prepared by MIROX Corporation

4

("MIROX") — a third-party that performs FMVSS inspections on low-speed land vehicles, among other services. (ECF No. 155-13.) In that report, MIROX recounts the findings of various inspections and tests that it performed on a MOKE-branded vehicle, providing photographs of the subject vehicle throughout. Second, Mr. Sachs draws facts from a separate MIROX report entitled "Issues with MOKE 'business.'" (ECF No. 155-14.) In that report, MIROX lodges a bevy of allegations against Plaintiff, listing numerous federal code sections and FMVSS with which Plaintiff allegedly failed to comply. Third, Mr. Sachs references information gathered during his personal inspection of a MOKE-branded vehicle in November 2021. (Exp. Wit. Stmt. 7-8.)

Based on facts drawn from the above sources, Mr. Sachs concludes that neither the Moke America vehicle that MIROX inspected nor the Moke America vehicle that Mr. Sachs personally inspected complied with FMVSS No. 500, which Mr. Sachs characterizes as "[t]he principal standard that a [low-speed vehicle] needs to meet" to comply with federal law. (Exp. Wit. Stmt. 3, 5-9.) Based on his review of photographs included in the 2019 MIROX report, Mr. Sachs further opines that Plaintiff "may be deemed to be in violation of 49 U.S.C. § 30112(a)" if it imported the pictured vehicle, as the vehicle was equipped with tires that "could not be lawfully imported into the United States." (Exp. Wit. Stmt. 7.) With respect to the vehicle that he personally inspected, Mr. Sachs also opines that the vehicle failed to comply with FMVSS No. 209, which sets forth labeling requirements for low-speed vehicles. (Exp. Wit. Stmt. 7-8.) Finally, Mr. Sachs opines that Plaintiff violated 49 U.S.C. § 30112(a) by "selling or offering for sale motor vehicles that were not properly certified to all applicable FMVSS by their actual assembler." (Exp. Wit. Stmt. 9.) In drawing this final conclusion, Mr. Sachs largely relies on opinions offered by MIROX in its "Issues with MOKE 'business'" report. (Exp. Wit. Stmt. 9.)

### C.    Plaintiff's Motion

Plaintiff now moves to exclude Mr. Sachs' expert testimony on three grounds.  First, Plaintiff contends that Department of Transportation ("DOT") Regulations preclude Mr. Sachs, a former NHTSA official, from testifying as an expert witness in proceedings between private litigants.  (Motion ("Mot.") 2.)  Second, Plaintiff argues that Mr. Sachs' testimony — which Defendants proffer to cast doubt on Plaintiff's trademark rights under the "unlawful use doctrine" — proves irrelevant to Plaintiff's infringement claim where the unlawful use doctrine "appears almost exclusively" in TTAB proceedings and neither the Fourth Circuit nor the Eastern District of Virginia has adopted it.  (Mot. 2, 7.)  Third and finally, Plaintiff attacks the factual bases for Mr. Sachs' opinions under Rule 703, arguing that MIROX employed faulty testing methodologies and equipment in preparing its reports.  (Mot. 2.)  On account of those methodological flaws, Plaintiff argues, experts in Mr. Sachs' field would not reasonably rely upon the hearsay evidence contained in those reports.  (Mot. 2.)

In response, Defendants first argue that the DOT regulations that Plaintiff cites do not apply to Mr. Sachs, as he is a former, rather than current, NHTSA employee.  (Response ("Resp.) 4.)  Even if the cited DOT regulations apply to former employees, Defendants continue, Mr. Sachs may still testify under the regulations, as he was not "personally and substantially involved in the matters on which he seeks to opine" while employed at NHTSA.  (Resp. 4-6.)

With respect to the relevance of Mr. Sachs' testimony, Defendants make scant effort to rebut Plaintiff's claim that the "unlawful use doctrine" proves inapplicable outside of PTO proceedings, stating only that "Plaintiff offers no compelling reason that this Court should ignore [the unlawful use] doctrine."  (Resp. 6.)  Defendants do, however, offer a second purpose for

6

which the Court could find Mr. Sachs' testimony relevant, arguing that Mr. Sachs opinions also

shed light on "the issue of injury to the value of the Mark." (Resp. 6.)

Finally, Defendants argue that the flaws that Plaintiff identifies in MIROX's testing

methods and equipment constitute "red herrings" that do not speak to the specific information in

the reports that Mr. Sachs in fact relied upon in forming his opinions. (Resp. 7.) Defendants

further argue that any complaints that Plaintiff lodges about the quality of the information

contained in the MIROX reports speak "to the weight of Mr. Sachs' testimony," not its

admissibility. (Resp. 7-8.)

## II.     STANDARD OF REVIEW

### *Federal Rule of Evidence 702*

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702

provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training

or education may testify in the form of an opinion or otherwise if" the following conditions are

satisfied:

> (a) the expert's scientific, technical, or otherwise specialized knowledge will help
> the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the
> case.

Fed. R. Evid. 702.

Rule 702 thus establishes "a district court's gatekeeping responsibility to 'ensure that an

expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand.'"

*Nease v. Ford Motor Company*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert v. Merrell*

*Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). In undertaking this gatekeeping function,

7

the district courts enjoy "broad latitude" to consider whatever factors prove applicable given "the unique circumstances of the expert testimony involved." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). The Rule 702 inquiry necessarily proves "flexible," focusing on the expert's "principles and methodology" rather than the conclusions that he draws. *Id.*

"A reliable expert opinion must be based on scientific, technical, or other specialized *knowledge* and not on belief or speculation." *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999). Courts look to several factors as indicia of reliability, including "testing, peer review, evaluation of rates of error, and general acceptability" in the expert's field. *Id.*

Regarding relevance, the Court must ask "whether [the] expert testimony proffered . . . is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591. The relevance inquiry is one of "fit" — expert testimony must demonstrate "a valid . . . connection to the pertinent inquiry as a precondition" of admissibility. *Id.* at 592.

Throughout its Rule 702 analysis, a district court must remain cognizant of two bedrock, yet competing principles. On the one hand, Rule 702 "was intended to liberalize the introduction of relevant expert evidence." *Westberry*, 178 F.3d at 261. District courts therefore "need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct." *Id.* On the other hand, expert testimony often proves uniquely capable of confusing or misleading the jury. *Id.* "Proffered evidence that has a greater potential to mislead than to enlighten" should therefore be excluded. *Id.* Critically, the proponent of expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n. 10).

8

***Federal Rule of Evidence 703***

While Rule 702 governs the admissibility of expert testimony generally, Federal Rule of

Evidence 703 prescribes the court's "relatively narrow inquiry" into an expert's reliance on

otherwise inadmissible information.  Fed. R. Evid. 703.  Rule 703 provides:

> An expert may base an opinion on facts or data in the case that the expert has
> been made aware of or personally observed.  If experts in the particular field
> would reasonably rely on those kinds of facts or data in forming an opinion on the
> subject, they need not be admissible for the opinion to be admitted.

Fed. R. Evid. 703.  Rule 703 thus controls only "whether an expert reasonably relied upon

inadmissible information in forming [his] opinions."  *Goodrich v. John Crane, Inc.*, 2018 WL

4677773, at *19 (E.D. Va. Sept. 28, 2018).  At bottom, courts determine "the sufficiency of the

bases for expert testimony" under Rule 702, not Rule 703.  *Id.*

## III.   ANALYSIS

The Court will GRANT Plaintiff's Motion on relevance grounds.  Defendants primarily

offer Mr. Sachs' testimony to call into question Plaintiff's trademark rights under the unlawful

use doctrine.  The relevance of Mr. Sachs' opinions therefore rests on that doctrine's

applicability.  The Fourth Circuit has not adopted the unlawful use doctrine, however, and

Defendants fail to explain why this Court should adopt it here.  Because Defendants — who bear

the burden of establishing the relevance of their proffered expert's testimony — provide no

compelling reason for the Court to apply the unlawful use doctrine, the Court finds Mr. Sachs'

testimony irrelevant to determining either party's liability for trademark infringement.  *Cooper*,

259 F.3d at 199.  The Court further finds Defendants' last-ditch effort to establish the relevance

of Mr. Sachs' testimony by pointing to damages unavailing, as Mr. Sachs' opinions do not speak

to a damages calculation in any manner.  Because the Court finds Mr. Sachs' proposed testimony

irrelevant to both liability and damages, the Court will GRANT Plaintiff's Motion to Exclude.

9

## A.    The Unlawful Use Doctrine [3]

A brief background of the unlawful use doctrine proves helpful to understanding Mr. Sachs' proposed testimony and the Court's reasons for excluding it from trial.

### 1.    The Lanham Act's "Lawful Use Requirement"

To register a trademark with the PTO, the Lanham Act requires that putative registrants submit a "[v]erified statement" that the mark they seek to trademark "is in use in commerce." 15 U.S.C. § 1051(d)(1). Since the promulgation of PTO Rule 2.69 in 1955, the TTAB has interpreted the Lanham Act's requirement that a mark "is in use in commerce" to mean that the mark is in use in *lawful* commerce. *FN Herstal*, 838 F.3d at 1086; Robert A. Mikos, *Unauthorized and Unwise: The Lawful Use Requirement in Trademark Law*, 75 Vand. L. Rev. 161, 177 (2022). In other words, the TTAB maintains that for a mark to warrant registration, "the sale or shipment of the product under the mark ha[s] to comply with all applicable laws and regulations." *In Re Pepcom Indus., Inc.*, 192 U.S.P.Q. 400, 401 (T.T.A.B. 1976). At least one commentator has dubbed Rule 2.69, and the TTAB's application thereof, as the Lanham Act's "lawful use requirement" for trademark registration. Mikos, *supra*, at 174.

The "lawful use requirement" often appears in opposition and cancellation proceedings before the TTAB, wherein a third-party (the "opposer") files its opposition to a pending trademark registration, *Gen. Mills Inc. v. Health Valley Foods*, 24 U.S.P.Q. 2d 1270 (T.T.A.B. 1992), or seeks cancellation of an already-registered mark, *Satinine Societa in Nome Collettivo di S.A. e. M. Usellini v. P.A.B. Produits et Appareils de Beaute*, 209 U.S.P.Q. 958 (T.T.A.B. 1981). In such proceedings, the opposer typically argues that the party seeking registration (the

---

[3]    The parties did not raise or address the applicability of the unlawful use doctrine at either the motion to dismiss stage or in their motions for summary judgment. (*See* ECF Nos. 19, 22, 116, 120, 130, 132, 137, 149, 151.) The Court therefore addresses its applicability now, notwithstanding the unusual posture for considering the propriety of this affirmative defense.

"applicant") or already holding registration (the "registrant") predicates its registration on a commercial activity that violates applicable statutes or regulations, i.e., on an unlawful use. *See, e.g.*, *E.W. Bank Co. v. Plubell Firm LLC*, 2016 WL 5219824, at *13 (T.T.A.B. Sept. 8, 2016) (seeking cancellation of registration based on use of mark in association with alleged violations of Securities and Exchange Act). Occasionally, the applicant or registrant raises the "lawful use requirement" as an affirmative defense, arguing that the *opposer* predicates *its* supposed priority in the disputed mark on an unlawful use. *See, e.g.*, *The Clorox Co. v. Armour-Dial, Inc.*, 214 U.S.P.Q. 850 (T.T.A.B 1982); *Gen. Mills Inc.*, 24 U.S.P.Q. 2d at 1271. In these latter cases, the applicant/registrant claims that because the opposer cannot seek registration for *its* prior use, the opposer's opposition to the applicant/registrant's registration must fail. *See Clorox Co.*, 214 U.S.P.Q. 850, at *1 ("Applicant has alleged, as an affirmative defense to opposer's claim of prior right, that opposer's prior use was not a lawful use in commerce.").

The TTAB has added substantial gloss to the lawful use requirement since its introduction. *See FN Herstal*, 838 F.3d at 1087 (collecting TTAB opinions). For example, the TTAB has held that a use proves unlawful only if "the issue of compliance has previously been determined (with a finding of non-compliance) by a court or government agency having competent jurisdiction under the statute involved, or where there has been a per se violation of a statute regulating the sale of a party's goods." *Kellogg Co. v. New Generation Foods, Inc.*, 6 U.S.P.Q. 2d 2045, 2047 (T.T.A.B. 1988). The TTAB has further opined that not all regulatory or statutory violations rise to the level of "unlawful use," as "there must be some nexus between the use of the mark and the alleged violation before the unlawfulness . . . can be said to result in the invalidity of a registration." *Gen. Mills*, 24 U.S.P.Q. 2d at 1274. The "lawful use requirement" entails a materiality dimension too: the TTAB maintains that regulatory violations will result in

11

denial of registration only where "non-compliance . . . [is] of such gravity and significance that the usage must be considered unlawful — so tainted that, as a matter of law, it could create no trademark rights." *Id.* at 1273.

>    2.    **The Unlawful Use Doctrine in the Federal Courts**

Though the Lanham Act's "lawful use requirement" appears "almost exclusively" in opinions of the TTAB, *FN Herstal*, 838 F.3d at 1086, the "lawful use requirement" has spawned a corollary in the federal courts: the "unlawful use doctrine." *CreAgri, Inc. v. USANA Health Scis., Inc.*, 474 F.3d 626 (9th Cir. 2007). As noted earlier, the "unlawful use doctrine" stands for the proposition that unlawful commercial activities "cannot provide the basis for a protectable trademark interest." *FN Herstal*, 838 F.3d at 1086. A collection of federal courts, including two Circuit Courts of Appeal, have recognized the "unlawful use doctrine" as a valid affirmative defense to actions for trademark infringement. *CreAgri Inc.*, 474 F.3d at 626; *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1226 (10th Cir. 2000).

In *United Phosphorus*, the Tenth Circuit credited as correct the defendant chemical manufacturer's assertion that the plaintiff could not establish its trademark rights in the disputed product name, and thus succeed on its infringement claim, without first showing that it "lawfully used [the disputed name] in commerce." *United Phosphorus*, 205 F.3d at 1225. Six years later, and citing the *United Phosphorus* precedent, the Ninth Circuit applied the "unlawful use doctrine" in a trademark infringement suit brought by a dietary supplement manufacturer, affirming summary judgment for the defendant based on the plaintiff manufacturer's inaccurate labeling of its olive oil-based supplement. *CreAgri*, 474 F.3d at 626.

In the wake of these two decisions, a handful of federal district courts have also acknowledged the "unlawful use doctrine" as a valid affirmative defense to trademark infringement claims. *See, e.g., Sream, Inc. v. Superior Disc.*, 2019 WL 2124887 (E.D. La. May

12

15, 2019) (holding that "[t]rademark rights cannot develop during periods of time when a mark is used in connection with goods which could not be lawfully shipped in interstate commerce); *Dessert Beauty, Inc. v. Fox*, 617 F. Supp. 2d 185 (S.D.N.Y. 2007) (noting that unlawful use renders a federally registered trademark unenforceable).

On the other hand, two Circuit Courts of Appeal have explicitly declined to adopt the "unlawful use doctrine" in trademark infringement cases.  In *FN Herstal v. Armory Inc.*, the Eleventh Circuit affirmed partial summary judgment for the plaintiff and rejected the defendant's unlawful use defense, choosing not to adopt the "unlawful use doctrine" where the defendant firearms dealer claimed that the plaintiff's supposedly senior use of a disputed mark violated federal firearms regulations.  838 F.3d at 1086-88.

In the most recent circuit opinion to take up the issue, *Perry v. H.J. Heinz Company Brands, L.L.C.*, the Fifth Circuit also rejected the "unlawful use doctrine." 994 F.3d 466 (5th Cir. 2021).  There, the defendant food manufacturer answered the plaintiff's infringement claim by filing a counterclaim for cancellation of the plaintiff's registered trademark, arguing that the plaintiff's mark proved invalid on account of his failure to comply with federal food labeling regulations.  *Id.* at 470.  The Fifth Circuit vacated the district court's grant of summary judgment on the defendant's counterclaim, refusing to adopt the unlawful use doctrine.  *Id.* at 475.

Numerous federal district courts have done the same, declining to adopt the "unlawful use doctrine" in trademark infringement suits.  *See, e.g.*, *Hi-Tech Pharms. Inc. v. Dynamic Sports Nutrition, LLC, et al.*, 2020 WL 10728951 (N.D. Ga. Jan. 10, 2020) (declining to apply unlawful use doctrine); *Am. Ass'n of Motorcycle Inj. Laws., Inc. v. HP3 L., LLC*, 2021 WL 3054799, at *5 (N.D. Ill. July 20, 2021) (same).

The Fourth Circuit has yet to address the unlawful use doctrine, and this Court can

identify only two cases from its sister courts within the Fourth Circuit that address the doctrine. *Booze Pops, LLC v. Real Est. Flipz, LLC*, 2021 WL 5366830 (D.S.C. Jan. 4, 2021); *Tassel Ridge Winery, LLC v. Woodmill Winery, Inc.*, 2013 WL 5567505 (W.D.N.C. Oct. 9, 2013). In *Booze Pops*, the defendant distributor of frozen alcohol products moved to dismiss the plaintiff's infringement claim, arguing that the plaintiff liquor manufacturer violated Florida law by holding a distribution license, thus forfeiting trademark priority under the unlawful use doctrine. *Booze Pops*, 2021 WL 5366830, at *3. The District of South Carolina did not reach the issue, finding that passing on the doctrine's applicability would be premature in light of unresolved questions of fact. *Id.*

In *Tassel Ridge*, the plaintiff winery sought summary judgment on its infringement claim, arguing that the defendant vineyard's competing use of the disputed mark could not establish priority under the Lanham Act, because the defendant sold wine bearing the mark before securing labeling approval, as mandated by federal law. *Tassel Ridge*, 2013 WL 5567505, at *5-6. Though the court denied summary judgment, it applied the unlawful use doctrine, finding that "any sale of [the defendant's wine] prior to [the date it secured approval] was not lawful *for purposes of determining priority*." *Id.* at *6 (emphasis added).

**B.**   **Because the Court declines to adopt the unlawful use doctrine, Mr. Sachs' testimony proves irrelevant to determining either party's liability for trademark infringement**

Against this backdrop, the Court now turns to consider Mr. Sachs' testimony. The Court will prohibit all evidence pertaining to the "unlawful use doctrine" from trial, as Defendants fail to meet their burden of establishing the doctrine's propriety in this case. Indeed, Defendants limit their discussion of the issue to a single sentence in their response brief — a far cry from the clear and convincing evidence required to establish the doctrine's applicability. (Resp. 6.)

14

Because the Court declines to adopt the "unlawful use doctrine," the sole issue to which Mr. Sachs' proposed testimony speaks, the Court finds that Mr. Sachs' opinions will shed no light on the relevant inquiries in this case. For that reason, the Court will GRANT Plaintiff's Motion to Exclude.

### 1.   Mr. Sachs' proposed testimony speaks exclusively to the issue of unlawful use

As a preliminary matter, the Court finds that Mr. Sachs' proposed testimony concerns only the unlawful use issue. As detailed in Section I.B., Mr. Sachs' Expert Witness Statement consists of the following: (1) a discussion of the regulatory framework applicable to low-speed vehicles; (2) a summary of Mr. Sachs' qualifications; (3) the opinions that Mr. Sachs intends to offer at trial; and (4) a list of the sources from which Mr. Sachs assembled the facts underlying his opinions. (Exp. Wit. Stmt. 1-10.) Critically, Mr. Sachs' opinions speak exclusively to how Plaintiff allegedly violated the FMVSS and other applicable provisions of the National Traffic and Motor Vehicle Safety Act. (Exp. Wit. Stmt. 5-9.) Nowhere in his Statement does Mr. Sachs address how Plaintiff's alleged violations of the FMVSS impaired the value of the MOKE Mark. (Exp. Wit. Stmt. 1-11.) Nor does Mr. Sachs' Statement describe how or to what extent Plaintiff's competing use of the MOKE Mark confused Defendants' customers or led to lost profits. (Exp. Wit. Stmt. 1-11.) Simply put, Mr. Sachs makes no effort to detail or estimate the damages that Defendants supposedly suffered, whether as a result of Plaintiff's alleged violations of FMVSS or as a result of Plaintiff's alleged infringement more broadly. *Invicta Plastics (USA) Ltd. v. Mego Corp.*, 523 F. Supp. 619, 624 (S.D.N.Y. 1981) ("Damage awards for lost sales and profits may not be based upon the *assumption* that a trademark infringement resulted in commercial injury.") (emphasis added).

15

Defendants' contention that "the Sachs Report is . . . relevant to the issue of injury to the value of the Mark" thus strains credulity. (Resp. 6.) Under the Lantham Act, a party that establishes a trademark infringement violation "shall be entitled . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). Mr. Sachs' opinions would not aid the jury in its calculation of any of these damages measures, as Mr. Sachs makes no attempt to translate how Plaintiff's alleged violations of the FMVSS led to diminution in the value of the MOKE Mark or injury to Defendants' business. (Exp. Wit. Stmt. 1-10.) A damages calculation based on Mr. Sachs' proposed testimony would amount to pure speculation. *Agric. Services Ass'n, Inc. v. Ferry-Morse Seed Co., Inc.*, 551 F.2d 1057 (6th Cir. 1977) ("[D]amages are not permitted which are remote and speculative in nature."). Because Mr. Sachs offers no calculation, estimate, or opinion as to the injury that Defendants suffered as a result of Plaintiff's alleged violations of the FMVSS or alleged infringement, the Court (1) will not credit Defendants' assertion that Mr. Sachs' expert testimony proves relevant to damages and (2) will not admit his testimony on such basis.

Having found that Mr. Sachs' expert testimony proves irrelevant to calculating damages, the sole remaining issue for which Defendants offer his testimony is Defendants' affirmative defense under the unlawful use doctrine. (Resp. 6.) The Court now turns to decide whether to adopt the unlawful use doctrine and, in declining to do so, finds that Mr. Sachs' testimony lacks relevance to pertinent issues in the case entirely.

### 2.    The Court declines to adopt the unlawful use doctrine

Beyond baldly stating that "some Circuits . . . have accepted [the unlawful use doctrine]," Defendants offer no argument in response to Plaintiff's contention that the doctrine does not (or at least should not) apply here. (Resp. 6; Mot. 7-9.) Given the importance of the doctrine to Mr.

16

Sachs' proposed testimony, Defendants' silence on this point speaks volumes. *Cf. Kinetic Concepts, Inc. v. Convatec Inc.*, 2010 WL 1667285, at *8 (M.D.N.C. Apr. 23, 2010) (recognizing "the general principle that a party who fails to address an issue has conceded the issue); *Kissi v. Panzer*, 664 F.Supp.2d 120, 123 (D.D.C.2009) ("Because the plaintiff's opposition fails to address the defendants' arguments, the Court may treat the defendants' motion as conceded."). In the absence of binding Fourth Circuit precedent and upon considering Plaintiff's arguments against its application, the Court declines to adopt the unlawful use doctrine here.

First, the Fourth Circuit has not adopted the unlawful use doctrine, and Defendants offer no argument for why the Court should apply it here. *See Lumber Liquidators, Inc. v. Stone Mt. Carpet Mills, Inc.*, 2009 WL 5876245, at *1 (E.D. Va. July 23, 2009) ("The proponent of expert testimony bears the burden of establishing [its] relevance . . . by a preponderance of the evidence."). The Court doubts seriously whether the Fourth Circuit would employ the unlawful use doctrine to strip a party of its common law trademark rights for a purely technical regulatory violation, particularly where Defendants fail to identify any administrative or judicial finding of illegality. Indeed, even in those circuits that recognize the unlawful use doctrine, the burden rests on "[t]he party asserting the defense [to] establish that is applies by clear and convincing evidence." *FN Herstal*, 838 F.3d at 1087. Not all regulatory or statutory infractions "will be sufficient to justify denial of trademark protection based on unlawful use." *Id.* Rather, "there must be a nexus between the use of the mark" and the infraction, "and the violation must be material." *Id.* A violation proves material only where it is "of such gravity and significance that the [trademark] usage must be considered unlawful — so tainted that, as a matter of law, it could create no trademark rights." *Id.* (cleaned up).

17

Here, Defendants — the party raising the doctrine by way of Mr. Sachs' expert testimony — offer no basis for its application. To the contrary, Defendants' treatment of the issue could be generously described as cursory. Defendants' argument in support of the doctrine consists of a single sentence, wherein Defendants state that "while some Circuits have criticized the unlawful use doctrine, others have accepted it, and Plaintiff offers no compelling reason that this Court should ignore that doctrine." (Resp. 6.) This effort falls far short of the weighty burden that Defendants bear to establish the doctrine's applicability: clear and convincing evidence. *FN Herstal*, 838 F.3d at 1087.

Second, adopting the unlawful use doctrine under these circumstances would impermissibly "allow third parties to circumvent Congress's decision not to permit private enforcement" of the FMVSS. *Bauer v. Elrich*, 8 F.4th 291, 300 (4th Cir. 2021). It is well-established that the National Traffic and Motor Vehicle Safety Act does not create a private right of action. *Leonard v. Gen. Motors L.L.C.*, 504 F. Supp. 3d 73, 100 (D. Conn. 2020). Indeed, Congress' intent in passing the National Traffic and Motor Vehicle Safety Act was that NHTSA, not private individuals, would enforce the FMVSS. *See Handy v. General Motors Corp.*, 518 F.3d 786, 788 (9th Cir. 1975) ("Congress did not intend to create private rights of action [under the National Traffic and Motor Vehicle Safety Act] in favor of individual purchasers of motor vehicles when it adopted the comprehensive system of regulation to be administered by the NHTSA.").

Here, application of the unlawful use doctrine to bar Plaintiff's infringement claim would render the Lanham Act a "back door" through which Defendants, and future litigants, could create a de facto private cause of action where none otherwise exists. *See Hi-Tech Pharms.*, 2020 WL 1072895, at *6 (declining to apply the unlawful use doctrine to bar plaintiff's

infringement claim because "there is no private right of action under the statutes [d]efendants cite"). Were it to adopt the unlawful use doctrine, the Court would empower Defendants to sanction a competitor — by undercutting its trademark rights — for violations of a statute that Defendants unquestionably lack a right to enforce. *Cf. Healthpoint, Ltd. v. Ethex Corp.*, 273 F. Supp. 2d 817, 849 (W.D. Tex. 2001) ("The unclean hands doctrine should not bar Lanham Act claims when the doctrine is premised on allegations of non-compliance with the FDCA because such a use of the doctrine would essentially permit a private enforcement action — a power reserved for the FDA."); *Inmuno Vital, Inc. v. Golden Sun, Inc.*, 49 F. Supp. 2d 1344, 1359 (S.D. Fla. 1997) (refusing to bar plaintiff's trademark rights based on alleged violations of the Federal Food, Drug and Cosmetic Act ("FDCA"), as "no private right of action exists to redress alleged violations of the FDCA").

The Court finds that adoption of the unlawful use doctrine here would allow, and perhaps incentivize, parties to circumvent Congress' intent by using the Lanham Act as a means to facilitate otherwise impermissible claims. *Hi-Tech Pharms.*, 2020 WL 1072895, at *6; *Healthpoint*, 273 F. Supp. at 849; *Inmuno Vital*, 49 F. Supp. at 1359. Such possibility weighs heavily against adopting the doctrine in this case. *Bauer*, 8 F.4th at 300. The paucity of argument in support of the doctrine from Defendants does nothing to overcome this conclusion.

Third and finally, the Court finds that extracting the Lanham Act's "lawful use requirement" from its role in the trademark registration/cancellation process and recognizing it as an affirmative defense in trademark infringement cases ignores a critical distinction between trademark ownership and trademark registration. "Federal registration of a trademark does not confer ownership; trademark ownership is acquired from prior appropriation and actual use in the market." *Tassel Ridge*, 2013 WL 5567505, at *5. While registration under the Lanham Act

19

creates a presumption of seniority, and thus ownership, on the part of the registrant, the TTAB does not adjudicate ownership rights over trademarks. *Id.* The TTAB therefore does not strip a party of its ownership rights — and, by extension, its right to use a mark — when it applies the lawful use requirement to deny or cancel registration. *Id.*

Conversely, the core purpose of a trademark infringement claim under the Lanham Act is to adjudicate priority, and thus ownership, over a disputed mark. *See Sengoku Works Ltd. v. RMC Intern., Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996) ("It is axiomatic in trademark law that the standard test of ownership is priority of use."). A loss before the TTAB denies the putative registrant the conveniences associated with registration. *See B & B Hardware, Inc. v. Hargis Industries, Inc.*, 575 U.S. 138, 142-43 (2015) (discussing the benefits of trademark registration). A loss in an infringement suit denies a party its right to use a disputed mark entirely. *Id.* at 159. Simply put, the stakes are much higher in an infringement action. *Id.* Given those higher stakes, it is far from obvious or self-evident that similar standards should apply. Yet Defendants, who would have this Court adopt the judicial corollary to the TTAB's lawful use requirement, make no argument for why it should apply. (Resp. 6.) Put differently, Defendants fail to articulate why the Court, acting in a separate context and adjudicating a distinct question, should blindly follow the TTAB's approach to registration decisions. Absent a clear and compelling reason, the Court will not reflexively adopt the TTAB's standards. Lacking binding Fourth Circuit precedent, and because Defendants offer no argument for why the Court should adopt the doctrine, the Court declines to apply the unlawful use doctrine in this trademark infringement suit.

### 3.     Mr. Sachs' testimony proves irrelevant and will therefore be excluded

Because the Court declines to adopt the unlawful use doctrine and therefore bars all

evidence as to this affirmative defense — which constitutes the sole purpose for which Defendants proffer Mr. Sachs' testimony — the Court finds that Mr. Sachs' expert opinions prove irrelevant under Federal Rule of Evidence 702. *Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."). And because Mr. Sachs' testimony proves irrelevant, the Court must exclude it. *See Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) ("[I]f an [expert] opinion is not relevant . . . *Daubert* requires that it be excluded."). Because the Court excludes the entirety of Mr. Sachs' testimony on relevance grounds, the Court need not reach Plaintiff's alternative arguments for exclusion.

## IV.   CONCLUSION

For the reasons set forth above, the Court will GRANT Plaintiff's Motion to Exclude Testimony from Defendants' Expert Coleman Sachs (ECF No. 154).

An appropriate Order shall issue.

Let the Clerk file a copy of this Order electronically and notify all counsel of record.

It is so ORDERED.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Dated:  December 6, 2022